THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FRANKIE KNOTT, Defendant-Appellant.

Third District   No. 3—87—0608

Opinion filed June 23, 1989.

Jack Schwartz, of Braud Warner, Ltd., of Rock Island, for appellant.

Greg McClintock, State's Attorney, of Monmouth (John X. Breslin, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE WOMBACHER delivered the opinion of the court:

The trial court denied the defendant's motion to dismiss for failure to try her within 160 days (Ill. Rev. Stat. 1987, ch. 38, par. 103—5). The court subsequently found her guilty of driving under the influence of alcohol and driving with a breath-alcohol concentration of .10 or more (Ill. Rev. Stat. 1987, ch. 95½, pars. 11—501(a)(2), 11—501(a)(1)). The defendant appeals.

The record shows that on March 29, 1986, the defendant, Frankie Knott, was charged by uniform traffic citation with driving under the influence of alcohol (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(a)(2)). She immediately posted bond and was released. On April 24, 1986, the State moved without objection to also charge her by information with driving with a breath-alcohol concentration of .10 or more (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(a)(1)). The defendant then pled not guilty on both counts and demanded a jury trial.

On February 11, 1987, the defendant filed a motion to dismiss for failure to try her within 160 days. Following a hearing, the court denied her motion. The defendant then waived her right to a jury trial and the case was set for a bench trial.

At the defendant's trial, Henry Jahde testified that on March 29, 1986, around 1:10 or 1:15 p.m., he saw two women in a gray, two-door Oldsmobile with Illinois dealer's license plate 901X. They were driving in a drunken manner, and when they exited the car at one point, the driver appeared to have trouble standing. Jahde described the driver as the shorter of the two women, with darker hair and wearing gray slacks and a dark top. He called the police and shortly thereafter told a responding officer the direction in which the car had gone.

Frank Bishop testified to seeing essentially the same events, though he stated that he could not identify the driver. He noted that he was at the police station when they brought the defendant in around 1:30 p.m. She appeared to be the same person who had been driving the gray car.

Monmouth police officer Dale Heiser testified that at 1:13 p.m. on March 29, 1986, he was dispatched to look for a gray car with license plate number DL 901X, being operated by a possibly intoxicated driver. He spoke with Jahde, then proceeded in the direction in which the gray car had gone. He subsequently saw a gray Oldsmobile with

dealer plates pull up across from the Palace Tap. He watched two women exit from the car and saw that the defendant had been driving. Both women walked slowly and had poor balance. At 1:19 p.m., Officer Heiser went into the tavern, which he knew the defendant owned, and asked her to come outside so he could speak with her. The defendant came outside and admitted that she had been driving the gray Oldsmobile. She stated, however, that she had not done anything wrong. She explained that her erratic driving observed by Jahde and Bishop had been connected with her attempt to offer her brother-in-law a ride. Officer Heiser noticed that the defendant's speech was slurred, her eyes were bloodshot and watery, and her balance was poor. He believed she was intoxicated. Heiser then left to obtain signed complaints from the witnesses. After leaving statement forms with Jahde and Bishop, he returned to the tavern and arrested the defendant at 1:46 p.m. Heiser noted that he watched the defendant take a breath-alcohol test at 2:30 p.m., and that her result was .19.

Monmouth police officer Terry Owens testified that he administered the breath test to the defendant, that he was certified to do so, and that he followed all of the proper procedures. Officer Owens stated that the machine worked properly during the test and that the defendant's breath registered a .19 alcohol concentration. He further noted that from his observations of the defendant's behavior he believed she was intoxicated. Owens denied striking the machine and did not recall the defendant's having to blow into the machine more than once.

The defendant testified that on the day in question she went to the Hard Times tavern about 9 or 9:30 a.m. with her sister and brother-in-law. She had two or three alcoholic drinks, then left with her sister. She was driving a silver Chevrolet with a white vinyl top and dealer's plates. They subsequently spotted her sister's husband, who had left before them, and offered him a ride. They never got out of the car before they arrived at the Palace Tap. Arriving at the Palace Tap, they went inside. About 12:15 p.m., Officer Heiser entered and thereafter told her that if he obtained two signed complaints he would arrest her. Because she was nervous about being arrested, she drank 6 to 10 alcoholic drinks. Around 1:46 p.m., Heiser returned and arrested her. The defendant further testified that during the breath test, the officer administering it hit the machine and made her blow into it three times in order to get it to work. On cross-examination, the defendant denied ever slamming on her car's brakes, driving repeatedly back and forth, or sliding down in the seat, as Jahde and Bishop had reported.

Jim Boyd testified that he was a customer in the Palace Tap at the times in question. He saw the defendant arrive around 11:30 a.m. and Officer Heiser arrive around 11:45 a.m. After the officer left, Boyd said he watched the defendant continue drinking and get drunk. Officer Heiser returned 40 to 60 minutes later and arrested the defendant. Boyd opined that the defendant was not intoxicated when Heiser was there the first time, but was intoxicated when he returned.

Jerry Howell testified that he remembered seeing the defendant enter the Hard Times Saloon around 10:30 to 10:45 a.m. and leave around 11:20 a.m. Everett Cook testified that before 11:30 a.m. he saw the defendant park her car across from the Palace Tap and walk into the tavern. He did not believe she was intoxicated. About five minutes later, he saw a police car pull up and an officer enter the tavern.

The defendant's sister testified that they had gone to the Hard Times Saloon around 9:30 a.m. The defendant drank two to four alcoholic drinks, then they left around 11 or 11:30 a.m. She remembered slowing down to offer her husband a ride, but did not remember backing up. She denied ever getting out of the car. They arrived at the Palace Tap before noon. Five to ten minutes later, a police officer arrived. The officer left and returned 40 to 45 minutes later. By then, the defendant was intoxicated.

The defendant's husband testified that he had called the Hard Times Saloon about 11:15 a.m. and talked with his wife. When he called back, he learned she was no longer there. About noon, he called the Palace Tap and was told she was there.

In rebuttal, Officer Heiser testified about his activities prior to the defendant's arrest. He accounted for the time before 1:13 p.m., when he received the dispatch relating to the defendant. The State also introduced into evidence the police radio logs showing that the report of a drunken driver had come in at 1:13 p.m., that Officer Heiser had reported observing the defendant's vehicle at 1:14 p.m., that the officer had left the bar at 1:27 p.m., and that at 1:42 p.m. he had reported his return to the bar.

The trial court found the defendant guilty of driving under the influence of alcohol and driving with a breath-alcohol concentration of .10 or more. It sentenced her to pay a $500 fine, plus costs and penalties, and to serve seven days in jail.

On appeal, the defendant first argues that the trial court erred in denying her motion to dismiss based on the State's failure to try her with 160 days of her jury demand.

Before addressing that contention, we note that the State has filed a motion to strike parts of the defendant's brief which rely on matters outside the record. To the extent the defendant relies on matters outside the record, we grant the State's motion.

Turning to the defendant's argument, we note that when the defendant is charged by a uniform citation and complaint, Supreme Court Rule 505 (107 Ill. 2d R. 505) provides that if the accused intends to plead not guilty and demand a jury trial, he shall so notify the clerk of the court at least five days before the day set for his appearance; trial shall then be scheduled within the time prescribed by section 103—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 103—5). Section 103—5(b) of the Code provides that with certain exceptions every person free on bail or recognizance shall be tried within 160 days from the date he demands trial. Ill. Rev. Stat. 1985, ch. 38, par. 103—5(b).

Accordingly, a person charged with an offense by means of a traffic ticket, who is free on bail and demands a jury trial, must generally be afforded a jury trial within 160 days of his demand. (*People v. Seaberry* (1980), 86 Ill. App. 3d 369, 408 N.E.2d 51.) The subsequent filing of an information by the prosecution has no impact on the efficacy of the defendant's prior demand for trial by jury. (*People v. McCarrey* (1984), 122 Ill. App. 3d 61, 460 N.E.2d 781; *People v. Mears* (1980), 84 Ill. App. 3d 265, 405 N.E.2d 443.) However, when the prosecution charges the defendant simultaneously by a traffic citation and by an information, Rule 505 does not apply and the defendant must expressly request a speedy trial. *People v. Davis* (1982), 104 Ill. App. 3d 120, 432 N.E.2d 947.

We find *Davis* controlling in the instant case. While here the traffic ticket and the information were not filed simultaneously, they were both filed before the defendant entered her plea and demanded a jury trial. The defendant could have preserved her rights under Rule 505 by sending the proper notice to the clerk of the court prior to her appearance date. She did not do so. There is no indication the State was attempting to evade the speedy trial statute, and the policy reasons for prohibiting the State from such legal maneuvering are not present. Accordingly, since the defendant was charged by information prior to pleading and demanding a jury trial, she could not rely on Rule 505, but was required to specifically request a speedy trial. Since she failed to do so, the trial court properly denied her motion to dismiss.

The defendant's second argument on appeal is that the trial court erred in allowing into evidence the police radio logs. She did not

raise this issue in a post-trial motion, and no plain error is involved. Accordingly, the issue is waived. *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.

The defendant's third argument on appeal is that the State did not prove her guilty beyond a reasonable doubt of the charged offenses.

■■ ■ Once a defendant has been convicted, the reviewing court views the evidence in the light most favorable to the prosecution, and the relevant question is whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) The reviewing court will not substitute its judgment for that of the trier of fact on questions involving the weight to be given the evidence and the credibility of the witnesses. *People v. Kline* (1982), 92 Ill. 2d 490, 442 N.E.2d 154.

■ In the instant case, the defendant presented evidence showing that she became intoxicated only after Officer Heiser left the Palace Tap the first time. Conversely, the State presented evidence showing that she was intoxicated when she drove from the Hard Times Saloon to the Palace Tap. Accordingly, the issue of whether she drove while under the influence of alcohol presented weight and credibility questions for the trier of fact. We find from the evidence that a rational trier of fact could have found the defendant guilty beyond a reasonable doubt of driving under the influence of alcohol.

■■ ■ Regarding whether the defendant drove with a breath-alcohol concentration of .10 or more, the undisputed evidence showed that she drank alcoholic beverages in between driving and taking the breath test. Such evidence did not, however, invalidate the breath-test result, but only went to the weight to be accorded it. (See *People v. Dever* (1975), 26 Ill. App. 3d 213, 324 N.E.2d 641.) Given the overall evidence and the breath-test result of .19, we find that a rational trier of fact could have found the defendant guilty beyond a reasonable doubt of driving with a breath-alcohol concentration of .10 or more.

The judgment of the circuit court of Warren County is affirmed.

Affirmed.

STOUDER and BARRY, JJ., concur.